# United States District Court
## for the  DISTRICT OF 

FILED
2015 OCT 16 P 2:24
DISTRICT OF UTAH
DEPUTY CLERK

Esther Israel,
    Plaintiff
v. University of Utah
Donald Steven Strassberg
Jordan Elizabeth Rullo
Julia Mackaronis
Kelly Kinnish
Michael Miner
    Defendants

Case: 2:15cv00741
Assigned To : Furse, Evelyn J.
Assign. Date : 10/16/2015
Description: Israel v. University of Utah et al

## COMPLAINT FOR COPYRIGHT INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff Esther Israel alleges, on information and belief, the following against the defendants the University of Utah, Donald Steven Strassberg, Jordan Elizabeth Rullo, Julia Mackaronis, Kelly Kinnish and Michael Miner.

### Jurisdiction and Venue

1. These are actions for copyright infringement arising under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq. (The "Copyright Act"). The Court has subject matter jurisdiction under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright actions).
2. Venue is proper in this District under 28 U.S.C. §§ 1400, because the University of Utah and Donald Strassberg are both resident in Utah. (28 USC 1400, copyright actions may be brought where a defendant residents.) Pursuant to 28 USC 1391(b)(2), a substantial party of the actions alleged occurred within the District of Utah. Esther Israel's work was accessible to all defendants through Donald Strassberg's Human Sexuality Laboratory located in the Department of Psychology at the University of Utah, 380 South 1530 East, Behavioral Sciences Building Room 1328, Salt Lake City, UT 84112.
3. Esther Israel, a former graduate student in the Department of Psychology at the University of Utah, is the sole creator, author, and owner of all rights, including copyright, in the Original material, which is original and fixed with a set of pictures, text and syntax.

### Parties

4. On information and belief, defendant University of Utah is an academic institution owned and controlled by the State of Utah with its principal place of education, research and business at 201 President's Circle, Salt Lake City, Utah 84112. It is a component of the Utah System of Higher Education, under the governance of the Utah Board of Regents. The individual defendants - Donald Strassberg

("Strassberg"), Jordan Rullo ("Rullo"), Julia Mackaronis ("Mackaronis"), Kelly Kinnish ("Kinnish") and Michael Miner ("Miner"), through their positions and affiliations with the University of Utah or other defendants, engaged in the production, acquisition and distribution of research for scientific conference presentations, peer-reviewed publications and academic and career advancements. On October 8, 2015,Strassberg is a resident of Utah and tenured professor in the Psychology Department at the University of Utah. Rullo is a resident of Minnesota, affiliated with Mayo Clinic, 200 First Street SW, Rochester, MN, 55905, USA. Mackaronis is a resident of Washington. Kinnish is a resident of Georgia. Miner is a resident of Minnesota, affiliated with the Program in Human Sexuality/Center for Sexual Health, Department of Family Medicine and Community Health, University of Minnesota, Minneapolis, MN, USA.
5. Plaintiff Esther Israel ("Israel" or "Plaintiff") is a resident of Utah. In 2002, she moved from New York to attend a clinical psychology doctoral program at the University of Utah, and to be mentored in research by Strassberg. Israel was a graduate student in the Department of Psychology at the University of Utah from 2002-2009.

## Introduction

7. In 2003, Israel embarked upon a research project involving viewing time as a measure of sexual interest. This work entailed running a pilot study with the rationale of exploring the stimuli to which people are most and least sexually attracted. Israel selected the sexually explicit pictures for her pilot study (40 pictures of males and 40 pictures of females) and arranged the order of the pictures for this study, as well as paid for the printing of the pictures. Participants in the pilot study rated the pictures based on their subjective sexual appeal.
8. In 2004, Strassberg drove Israel to Copper Hills Youth Center, a local residential treatment facility for adolescents, for the purposes of reviewing the Abel Assessment *for sexual interest-2*™. The Abel Assessment is a commercially available computerized assessment tool that utilizes the viewing time paradigm to detect sexually deviant interests. Clients are presented with scenarios of partially clothed images of males and females of different age groups and ethnicities and asked to make judgments about the sexual attractiveness of each picture while their viewing time is recorded unobtrusively. Algorithms (based on responses of those with known normal and sexually deviant interests) are then used to compare the viewing times for the various age by gender categories of pictures. Israel selected and arranged a new set of pictures for her masters thesis study, consisting of 27 images of an individual male (25 for the study and 2 for the practice), 27 images of an individual female (25 for the study and 2 for the practice), and 10 landscape scenes (all for the study). Israel composed and gathered text to present the study materials, methods and data. The text contained study instructions that Israel authored, surveys she selected and arranged, and questions that Israel created specific for her viewing time masters thesis study.
10. Israel's study would involve a computer program, Direct RT version 2004 (www.empirisoft.com) that measures how long participants view the pictures. Israel

read the Direct RT version 2004 instruction manual published by Empirisoft, to assist users in designing their own viewing time study and to collect data. She then edited her study materials to be used in conjunction with Direct RT version 2004, and wrote computer syntax to provide each participant who sat before the desktop computer in Strassberg's Human Sexuality Laboratory in the Department of Psychology at the University of Utah, with the exact same study experience. In other words, if one did not have access to Israel's pictures and text made compatible with Direct RT version 2004, and Israel's syntax, they could not replicate this study, even if they had access to Israel's pictures and text and purchased Direct RT version 2004 from Empirisoft.

11. In 2005, when Israel submitted a research summary to the University of Utah's Institutional Review Board (IRB), Strassberg assured Israel she was the original creator of this project and thus, could expect credit for all future work derived from it.
12. On June 5, 2005, Israel received permission from the University of Utah's IRB, to collect data for her masters thesis study entitled "Viewing Time as an Objective Measure of Sexual Interest" through the University of Utah Psychology Department subject pool.
13. On Wednesday, June 22, 2005, Israel finalized and uploaded her Original material project to a desktop computer in Strassberg's Human Sexuality Laboratory that contained the Direct RT version 2004 computer program. True and accurate pictures (Exhibit 1), text (Exhibit 2) and computer syntax (Exhibit 3) of Israel's final product are attached to this Complaint as the "Original material". Plaintiff restates the Original material enabled data collection by running the study in conjunction with the Direct RT v 2004 computer program, both of which were uploaded to a desktop computer in Strassberg's Human Sexuality Laboratory. The study began with a screen that introduced the study; followed by a practice section where participants could provide their "sexual appeal ratings" to 4 pictures; followed by a 6 item sexual orientation questionnaire; followed by 21 items of the Sexual Opinion Survey (Fisher, White, Byrne & Kelly, 1988); followed by instructions for the study; followed by a presentation of 60 pictures of males, females and landscapes, twice; followed by 4 exit questions.
14. Until October 14, 2005, Israel recruited and ran participants from the Psychology Department pool. After data was collected, she wrote up her masters thesis document for submission to the University of Utah thesis editor. The title and copyright of Israel's 2006 masters thesis are found in Israel's masters thesis document attached as Exhibit 4.
15. In 2005, Strassberg shifted Israel's Original material to his incoming graduate student, Rullo. They began utilizing Israel's Original material without informing Israel or attempting to obtain her permission. For example, Strassberg and Rullo utilized Israel's Institutional Review Board (IRB) application and approval to collect data through the University of Utah Psychology Department subject pool after Israel had finished collecting data for her masters thesis project. When Israel's IRB application approval expired on April 6, 2006, Strassberg and Rullo submitted a request for an extension to Israel's IRB approval, and a renewal to Israel's IRB approved study.

16. On January 30, 2007, Strassberg submitted Israel's masters thesis document for publication in Archives of Sexual Behavior, a peer-reviewed journal. Strassberg listed himself as second author and to whom correspondence should be directed.
17. In 2007, Strassberg had the key and combination lock access to his research laboratory changed, and did not provide Israel with the resources to enter the laboratory.
18. Strassberg and Rullo claimed authorship access to Israel's already collected masters thesis data. For example, the data Israel collected for her masters thesis study was incorporated into Rullo and Strassberg's 2007 conference presentations with the titles "Sex Differences in Objective and Subjective Measures of Sexual Interest" and "Category-Specificity in Sexual Arousal/Interest as a Complex Function of Sex and Sexual Orientation". Moreover, Rullo and Strassberg listed Israel as the third presenter without notifying her.
19. Rullo utilized Israel's Original material and incorporated Israel's master thesis data in her 2008 masters thesis publication entitled "Category Specificity in Sexual Interest in Gay Men and Lesbians." This was again published in 2010 with Rullo, Strassberg and Israel listed as the authors. Plaintiff asserts she did not contribute to the writing and submission of this publication.
20. Strassberg and Rullo utilized Israel's Original materials in 2009 presentations titled "The controversies of Bisexuality," "Viewing Time as an Assessment of Sexual Interest/Arousal in Bisexual Men," and in a 2010 presentation entitled "Bisexuality."
21. Rullo utilized Israel's Original material in her dissertation study entitled "Category-Specificity in Sexual Interest in Bisexual Men and Women," published in 2011. Rullo's dissertation was again published in 2014/2015 under the title, "Gender-Specificity in Sexual Interest in Bisexual Men and Women," with Rullo, Strassberg and Miner listed as the authors.
22. Mackaronis, along with Strassberg, list themselves as authors of works that include Israel's unpublished masters thesis data. Mackaronis and Strassberg presented "Consistencies Among Features of Sexual Orientation" at a 2009 conference in which Kinnish is listed as the third presenter. Strassberg and Macakaronis presented "The Effect of Sexual Orientation and Masculinity-Femininity on Perceived Sexual Appeal," and "Multi-Level Predictors of Perceived Sexual Appeal," at 2010 conferences.
23. Mackaronis and Strassberg utilized Israel's Original materials in "The Sexual Appeal Study" (begun in 2008), and presentations on "Determinants of Sexual Appeal" in 2010 and "Beholder and Beheld: A Multi-Level Model of Perceived Sexual Appeal" in 2011.

### Suspected Infringement of Plaintiff's Research Publications

24. Israel notified Strassberg and Rullo of her disapproval of their use of her work. (See attached emails between Israel, Strassberg, Rullo, faculty in the Department of Psychology at the University of Utah, and the thesis editor as Exhibit 5). Yet, Strassberg and Rullo continued to use Israel's Original material as well as her masters thesis data.
25. On March 25, 2008, Israel consulted with Zachary Miles, Esq. who was then the

Technology and Commercialization Officer for the University of Utah. He indicated in an email: "As we discussed today, I believe that the material you disclosed to me falls under Policy and Procedure 6-7 Copyright Policy: Ownership. Here is the website http://www.research.utah.edu/policies/index.html Specifically, I do not believe that the University of Utah has any ownership in the material that you provided to us. However, I am probably not the final say, and this is my opinion." Note that the page of the website link in the email is defunct, however (on October 8, 2015) the policy is found at this link http://regulations.utah.edu/research/7-003.php and is the same as it was in the relevant years.

26. The relevant section of the policy (II. General Rules of Ownership) as applied to Students (C.) reads: "Notwithstanding Section III, and except to the extent contrary to University agreements with third parties or other law, unless provision is made to the contrary in advance of the commencement of the Work, students are the Owners of the copyright of Works for which academic credit is received, including theses, dissertations, scholarly publications, texts, pedagogical materials or other materials."
27. On May 9, 2008, Israel registered the copyright in Original Work. A true and correct copy of the Certificate of Registration for the Original Work, TXu 1-686-804 is attached as Exhibit 6.
28. Plaintiff contacted the office of general counsel at the University of Utah to inform them of her copyright. General counsel informed Plaintiff they do not represent graduate students enrolled at the University of Utah. Furthermore, general counsel said they could not provide Israel with referrals or resources to uphold and protect her copyright.
29. Plaintiff has never used the Original material outside of her masters thesis research project and has never licensed or otherwise authorized anyone else to copy, distribute, or publicly disseminate the Original material or make derivative works based upon it.
30. In September 2008, when Rullo's masters thesis was available to the public, Israel went to the University of Utah Marriott library to review Rullo's masters thesis. Upon finding evidence of plagiarism, she brought the information to the University of Utah's Research Misconduct Officer, Dr. Jeffrey Botkin.
31. On October 9, 2008, Dr. Botkin wrote in an email, "...your allegations do not involve sponsored research so they are not under my office's authority... Plagiarism can be a subjective determination. That said, my impression is that this does not represent actionable plagiarism. These documents report research by two graduate students under the same mentor that use the same methods with similar subject populations. The Rullo document states explicitly that these are the same methods used by Israel and Strassberg in your 2007 publication... There are close parallels in a number of sentences and a few sentences that have exactly the same wording as your thesis. This may be sloppy authorship but does not represent plagiarism in my opinion because 1) virtually identical studies are likely to lead to similar language here and there in the report, and 2) none of the instances appear to represent an attempt to use your substantive ideas without credit. We care about theft of ideas and bodies of writing, not snippets of language...Instances in which data are presented from your study that you did not present does not represent plagiarism. It is acceptable to

rework someone else's data from published works as long as there is attribution, as there is in this case."
32. For Israel, this case is about the University of Utah's tripartite claim. See letter dated April 27, 2011, as Exhibit 7, that "the University of Utah is not using the Work (defined below) Ms. Israel claims as her work" and that "Dr. Strassberg...reconfirmed that the University of Utah has not collected data using any of the methods utilized by Ms. Israel in over 15 months" and "that projects and research results, the data for which may have originally been gathered using similar research methods, are not still in the process of being drafted and/or published, but the work Ms. Israel claims copyright ownership of is not in use at the University of Utah..."
33. This case is also about Strassberg, Rullo, Mackaronis, Kinnish and Miner's misappropriation of Israel's Original material to run (at least) two studies with 203 (99+104) participants total. Their unauthorized use of her published and unpublished masters thesis data was presented at scientific conferences (2007, 2008, 2009, 2010, 2011) and published in peer-reviewed journals (2010, 2014/2015). See spreadsheet of known copyright infringements in Exhibit 8.

## FIRST CLAIM

### Infringing Publication and Discovery

34. Plaintiff learned that Rullo, Strassberg, and Miner published "Gender-Specificity in Sexual Interest in Bisexual Men and Women" (online on October 17, 2014) in Archives of Sexual Behavior, a peer-reviewed journal; and published in print in the July 2015 edition, Volume 44, Issue 5, pp. 1449-1457. This work is based on Rullo's dissertation "Bisexuality: Beyond the Prevailing Assumptions About Male and Female Sexual Orientation" submitted to the University of Utah editor in December 2011.

### Infringing Nature of the Publication

35. This 2014/2015 publication in Archives of Sexual Behavior describes a virtually exact replication of the Original material. (As used in this Complaint, the term "Infringing material" shall refer to any version of the Original material that appears after Israel originally created it, namely, for her masters thesis research project.)
36. Samples of Infringing material are Rullo's 2008 masters thesis document (Exhibit 9), Rullo, Strassberg and Israel's 2010 peer-reviewed publication (Exhibit 10), Rullo's 2011 dissertation document (Exhibit 11) and Rullo, Strassberg and Miner's 2014 online and 2015 print peer-reviewed publication (Exhibit 12). These can be compared to Israel's masters thesis document (see again Exhibit 4) and Israel and Strassberg's 2007 online and 2009 print peer-reviewed publication (Exhibit 13).

### University of Utah Actor in Infringement

37. The Original material and Infringing material were published at the University of Utah and also is featured as a project completed on the premises and using the property of the University of Utah, as demonstrated by a reference in each presentation and publication to the University of Utah. See again Exhibit 8 for a true and correct copy of a listing of Infringed material and the presenter/authors academic affiliation.
38. At all times relevant, Plaintiff had a copyright on the Original Materials appropriately registered as noted above.
39. There is substantial similarity between the copyrightable expression in the Original material and the Infringed material.

### Access to Original Material

40. At all relevant times, Strassberg had access to the Original material, given that it was stored on a desktop computer of his Human Sexuality Laboratory in the Department of Psychology at the University of Utah. Moreover, Strassberg barred Israel from access to his lab.

### No License or Permission to Reproduce Material Subject to Copyright

41. Israel has never been asked for permission for, and has never consented to, the use, reproduction, or creation of a derivative work based on her Original material, including the Infringed material. Nor has she ever been asked or agreed to the public display and distribution of a presentation or publication containing the Infringed material, or to the use of any of her other exclusive rights in the Original material under the Copyright Act.

### SECOND CLAIM

### False Endorsement Federal Lanham Act 15 USC 1125

42. Defendants Strassberg and Rullo falsely used the name of Plaintiff as a third "co-author" in the presentations and papers entitled, "Category-Specificity in Sexual Arousal/Interest as a Complex Function of Sex and Sexual Orientation," and "Category Specificity in Sexual Interest in Gay Men and Lesbians". This false labeling of these presentations and papers as voluntarily contributed to and co-authored by the Plaintiff is deliberately misleading, since Israel was not presented with the opportunity to voluntarily participate or give permission for the use of her name.
43. False authorship is material since a substantial measure of academic productivity (i.e., "publish or perish"), quality and reputation is developed by authorship of academic papers.
44. The false authorship claim misleads and deceives readers and peers with the belief that the Plaintiff authored the works, and that all subsequent works are based on a paper co-authored by Israel and Strassberg in 2007. In fact, all works that reference

the Israel and Strassberg 2007 publication are based on Israel's masters thesis published in 2006. Furthermore, these subsequent studies would not have been made possible without utilizing Original material Israel prepared in 2004-2005 to run her masters thesis study.
45. The academic papers were posted online and placed into interstate commerce, since academic papers are published nationally and internationally and subscriptions are accessed and purchased around the country and world.
46. The plaintiff worked and works in the mental health profession, and false authorship substantially injures her professional reputation, which is the goodwill associated with her professional services.

### THIRD CLAIM

**False Endorsement Utah Code Ann. § 13-11a-3**

47. Plaintiff restates and re-alleges all elements of paragraphs 42 to 46 above, pursuant to UCA13-11a-3 that states, in relevant part, "(1) Deceptive trade practices occur when, in the course of a person's business, vocation, or occupation that person: (a) passes off goods or services as those of another".
48. Based on the false endorsement of papers that the Plaintiff did not co-author (described above in paragraph 42), defendants have also violated this state law, and are liable for the damages to Plaintiff.
49. Moreover, Rullo's masters thesis document (2008) and the Rullo, Strassberg and Israel's peer-reviewed publication (2010) contain words lifted directly out of Israel's masters thesis document (2006). In some instances the wording is plagiarized; that is, quoted without giving credit to the source, which is Israel's 2006 masters thesis document. In other instances, the wording is cited to an incorrect source, the Israel and Strassberg 2007 publication, when those references should have been attributed to Israel's 2006 masters thesis document. There are words in Rullo's 2008 masters thesis document and in the Rullo, Strassberg and Israel 2010 publication that are falsely credited to the Israel and Strassberg 2007 publication, when the wording was not derived from that reference, nor from Israel's 2006 masters thesis document. False authorship, false references and false citations are relevant in the body of these works. Rullo and Strassberg have reconfigured the chronology of events so that it would appear to the public that the Original material became available to them in 2007, that Israel is not the sole creator of the work, that plaintiff was aware at the time and consented to the use of her Original materials, and Israel was involved in the research projects and the write up of the results. Once again, these historical reinventions by Rullo and Strassberg mislead and deceive readers and peers with the belief that their works were a collaborative, consensual effort. Since the authorship of papers in academia is a substantial measure of academic productivity, quality and reputation, false authorship is material.

### FOURTH CLAIM

**Failure To Endorse - Federal Lanham Act 15 USC 1125**

50. Plaintiff restates claims stated in paragraphs 42 to 49 above.
51. On the numerous occasions described above, including but not limited to the 2014/2105 publication of Defendants paper "Gender-Specificity in Sexual Interest in Bisexual Men and Women" (online on October 17, 2014) in Archives of Sexual Behavior, Defendants University of Utah, Rullo, Strassberg, and Miner failed to appropriately credit Plaintiff for the Original Material published in that paper under their names.
52. This failure to appropriately attribute the work to the Plaintiff falsely presented the material as their own and not of the Plaintiff.
53. Plaintiff was harmed professionally since the Original Material was used and republished professionally without advancing the career and professional reputation of the Plaintiff.

### FIFTH CLAIM

**Additional Copyright Infringements**

54. From 2006 to the present, there were numerous IRB applications, submissions for awards within the Department of Psychology at the University of Utah, and with other academic institutions and scientific associations, presentations and publications, that relied on Israel's Original materials and masters thesis data, for which she was not given credit, authorship, nor appropriately referenced. See Remuneration columns (Financial, Other) in Exhibit 8.
55. Every time a researcher or assistant accessed, or provided others with access to, Israel's Original material they infringed upon Israel's copyright. Study participants were unwittingly complicit with Strassberg, Rullo, Mackaronis and the University of Utah in violating Israel's copyright. Therefore, the number of violations is unknown and assumed to be in excess of what is reported in the publications of data collected on 203 participants since 2006 (because not all collected participant data is utilized and reported and there are unlimited uses of Direct RT version 2004). Strassberg and Rullo colluded to violate Israel's copyright and misrepresent themselves to their peers and study participants. The University of Utah failed to protect Israel and uphold their policy that "students are the Owners of the copyright of Works for which academic credit is received, including theses...or other materials."

### REQUESTS FOR RELIEF, DAMAGES, AND INJUNCTION

56. If not enjoined, The University of Utah, Strassberg, Rullo, Mackaronis, Kinnish, Miner and possibly others, will continue to infringe upon Israel's copyright by referencing research in which they were involved, without acknowledging their forbidden access to it.
57. Defendants The University of Utah, Strassberg and Rullo's conduct constitute willful infringement. Defendants Mackaronis, Kinnish and Miner's conduct constitutes, at the very least, reckless copyright infringement in disregard of the rights of Israel.
58. These wrongful acts of defendants have caused irreparable injury to Israel, and

unless this Court restrains defendants from further use of the Infringed material, Israel will continue to suffer irreparable injury for which she has no adequate remedy at law.
59. As a direct and proximate result of defendants' wrongful acts, defendants have been and will continue to be unjustly enriched, and Israel has suffered and will continue to suffer damages in an amount not yet fully determined.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against defendant as follows:
  A. Preliminary injunction during the pendency of this action and a permanent injunction thereafter enjoining and restraining defendants, their agents, servants, employees, attorneys, partners, licensees, divisions, affiliates, parent corporation(s), and all others in active concert or participation with any of them from copying, distributing, publicly displaying, or otherwise making any use of the Infringed Material.
  B. An award of monetary damages sufficient to compensate Plaintiff for the injuries suffered as a result of Defendant's wrongful conduct;
  C. An award of Defendants' profits and unjust enrichment realized from its infringement;
  D. An award to Plaintiff of her costs and reasonable attorney's fees expended in this action; and
  E. An award of such other and further relief as the Court deems just and proper.

### Jury Demand
Respectfully submitted,

/s/ Esther Israel

Plaintiff
757 South 900 East, #b
Salt Lake City, UT 84102
801-671-5474
estherisrael@yahoo.com