IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ESTHER ISRAEL,<br><br>                      Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH, DONALD STEVEN STRASSBERG, JORDAN ELIZABETH RULLO, JULIA MACKARONIS, KELLY KINNISH and MICHAEL MINER,<br><br>                      Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND<br><br><br>Case No. 2:15-CV-741 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Leave to File an Amended Complaint. For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

Esther Israel ("Plaintiff") filed a Complaint against the University of Utah, Donald Steven Strassberg, Jordan Elizabeth Rullo, Julia Mackaronis, Kelly Kinnish, and Michael Miner (collectively, "Defendants") on October 16, 2015. Plaintiff filed a Motion for Leave to Amend on September 26, 2016, seeking to add an additional alleged infringing publication titled "Beholder and Beheld: A Multilevel Model of Perceived Sexual Appeal" (the "Publication") and three additional state-law claims of: (1) breach of fiduciary duty/implied warranty of good faith against the University of Utah and Dr. Strassberg; (2) promissory estoppel; and (3) violation of the common law right of publicity against the University of Utah, Dr. Strassberg, and Dr. Rullo. Defendants oppose Plaintiff's Motion, claiming the addition of these claims would be futile.

1

## II. MOTION TO AMEND STANDARD

Generally, once a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[1]  Federal Rule of Civil Procedure 15(a) specifies that "[t]he court should freely give leave when justice so requires."[2]  The Supreme Court has indicated that leave sought should be given unless "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment"[3] is present.  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[4]

## III. DISCUSSION

To resolve Plaintiff's Motion, the Court must consider whether amendment would be futile.  The Court will consider Plaintiff's proposed additional claims in turn.

A.  COPYRIGHT INFRINGEMENT

In order to establish copyright infringement, two elements must be met: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.[5]

Defendants assume for the purposes of this Motion that Plaintiff has a valid copyright in her work.  Thus, Plaintiff must sufficiently allege that Defendants copied constituent elements of her work that are original.  To prove copying, Plaintiff must establish that the Defendants copied

---

[1] Fed. R. Civ. P. 15(a)(2).

[2] *Id.*

[3] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[4] *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

[5] *Blehm v. Jones*, 702 F.3d 1193, 1199 (10th Cir. 2012).

Plaintiff's work as a factual matter and, as a mixed issue of fact and law, that the elements copied were protected.[6]

To prove copying of legally protectable material, a plaintiff must demonstrate that there is a substantial similarity between the legally protectable elements of the original work and allegedly infringing work.[7] In order to decide whether two works are substantially similar, the court asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."[8] To determine whether the defendant has copied legally protectable material, courts often utilize the "abstraction-filtration-comparison" analysis.[9] This analysis is described as follows:

> At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then, we filter out the nonprotectable components of the product from the original expression. Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.[10]

Plaintiff states that the Publication "utilizes the Original Material as well as an unpublished rating system (e.g., view, explicitness, picture quality and target population) Israel placed in her Original Material to evaluate the pictures in her master's thesis study; thus,

---

[6] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002).

[7] *Id.* at 942–43.

[8] *Id.* at 943 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996)).

[9] *Id.* at 943 n.5.

[10] *Id.* (quoting *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284–85).

Mackaronis, Strassberg, Cundiff and Cann created a derivative work that is based on Israel's Original Material."[11]

Accordingly, using the abstraction-filtration-comparison test, the Court will analyze: (1) the Plaintiff's Original Materials, which consists of study pictures,[12] study text,[13] and computer syntax;[14] and (2) the unpublished rating system.

   1.   *Original Materials*

The first step of the abstraction-filtration-comparison analysis is to separate the ideas from the expression. The pictures within Plaintiff's Original Materials were all taken from "commercially available magazines . . . , websites . . . and clothing catalogues."[15] Because the pictures were taken from these sources, Plaintiff does not have any copyright in the individual pictures. However, Plaintiff's "original selections or arrangements of [unprotected] elements may be protectable."[16]

 Next, the text of the Original Materials appears to be copyrightable and protectable material. It is well established that an author's expression of ideas are protectable, however, the ideas themselves are not protectable.[17] Applying this to the text of the Original Materials, the

---

[11] Docket No. 37 Ex. 1 ¶36.

[12] Docket No. 43 Ex. 1.

[13] *Id.* Ex. 2.

[14] *Id.* Ex. 3.

[15] *Id.* Ex. 4, at 52.

[16] *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1139 (10th Cir. 2016).

[17] *Feist Publication, Inc. v. Rural Telephone Servs. Co., Inc.,* 499 U.S. 340, 350 (1991).

4

idea of a voluntary survey based on sexuality is not protectable. However, similar to Plaintiff's arrangement of pictures, her expression is protectable.

Finally, the computer syntax of the Original Materials may have protectable elements. However, Plaintiff's proposed Amended Complaint does not provide enough information for the Court to gauge whether or not protectable elements are present.

The next step in the abstraction-filtration-comparison analysis is to compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar. Copyright law only protects against the copying of expression, but ideas themselves, or expression that falls under the "merger doctrine" is not copyrightable.[18] "Under the merger doctrine, copyright protection is denied to expression that is inseparable from or merged with the ideas, processes, or discoveries underlying the expression."[19] Similarly, under the *scenes a faire* doctrine, protection is denied to expressions that are "standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting."[20]

Comparing the Original Materials pictures to the Publication, substantial similarity is not met. The Publication used 34 photographs of men and 34 photographs of women from a variety of media sources, similar to the Original Materials.[21] However, Plaintiff has not shown that the Publication copied Plaintiff's protectable selection and arrangement of photographs. The mere idea of using photographs of men and women from media sources in a study about sexuality is not protectable expression. Thus, there is no infringement.

---

[18] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993).
[19] *Id.*
[20] *Id.*
[21] Docket No. 42 Ex. B, at 3.

Next, comparing the Original Materials text to the Publication, substantial similarity is also not met. As already established, Plaintiff has protection in the arrangement and selection of her text. The Publication does not contain any verbatim copying of the arrangement and selection from the Original Materials. While there may be a few sentences that are similar, this does not establish infringement. Any similarities are due to the fact that both papers concern similar subject matter and used similar testing methods.

Finally, substantial similarity is not present between the Original Materials computer syntax and the Publication. Computer syntax may have potentially protectable elements; however, Plaintiff does not provide enough information as to what her computer syntax entails, or what the protectable elements of that computer syntax may be. Nor has she demonstrated that Defendants used substantially similar computer syntax in the Publication. Thus, there can be no infringement

Based on the above, the Court finds that Plaintiff has failed to adequately allege that the Publication copied any protected elements of Plaintiff's Original Materials. Therefore, Plaintiff fails to state a claim, rendering amendment futile.

2.  *Unpublished Rating System*

Plaintiff does not definitively define what her "unpublished rating system" entails, but rather gives examples as to what is considered her unpublished rating system. These examples include things such as "view, explicitness, picture quality, and target population."[22] Plaintiff alleges that she placed this unpublished rating system in her Original Materials to help evaluate

---

[22] Docket No. 37 Ex. 1 ¶36.

the pictures in her master's thesis study.[23]  Plaintiff's unpublished rating system is an idea, rather than protectable expression, and therefore not subject to copyright protection.  Even if it were protectable, Defendants did not copy Plaintiff's work as a factual matter because there is no substantial similarity between the Publication and Plaintiff's "unpublished rating system."  Therefore, Plaintiff fails to state a claim, rendering it futile.  Thus, Plaintiff's leave to amend for the addition of the Publication will not be permitted.

B.  LANHAM ACT

Plaintiff alleges that the Publication "failed to appropriat[e] credit [to] Plaintiff for the Original Material published in [the Publication] under their names."[24]  Plaintiff asserts that this violates the Lanham Act.

15 U.S.C. § 1125(a) states that:

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion . . . mistake . . . or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin . . . .[25]

In order to prevail on a claim under the Lanham Act, the following elements must be met: (1) the plaintiff has a protectable interest in the mark; (2) the defendant has used "an identical or similar mark" in commerce; and (3) the defendant's use is likely to confuse consumers.[26]

---

[23] *Id.*

[24] *Id.* ¶ 55.

[25] 15 U.S.C.A. § 1125(a) (West 2017).

[26] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013).

Here, Plaintiff has not alleged that she possess a protectable mark. In addition, Plaintiff has failed to show that failing to use her name in the Publication constitutes use in commerce likely to cause confusion. Therefore, this claim fails.

C. STATE-LAW CLAIMS

Plaintiff seeks to add various state-law claims. Defendants argue that Plaintiff's claims are barred by the Governmental Immunity Act of Utah. "Compliance with the Immunity Act is a prerequisite to vesting a district court with subject matter jurisdiction over claims against governmental entities."[27] Defendant argues that the addition of these state-law claims would be futile for three reasons: (1) the Immunity Act bars Plaintiff's claims; (2) Plaintiff did not file the required notice of claim under the Immunity Act; and (3) Plaintiff's proposed amendment was not timely filed under the Immunity Act.

*1. Governmental Immunity Act of Utah*

In order to determine whether a government entity is immune from suit for injury resulting from the exercise of governmental functions, courts must examine three questions: (1) whether the activity is a governmental function, for which the legislature has granted blanket immunity; (2) if the activity is an immunized governmental function, whether that blanket immunity has been waived in another section of the Act; and (3) if immunity has been waived, whether the Act contains an exception to that waiver that would result in the retention of the immunity despite the waiver.[28]

---

[27] *Wheeler v. McPherson*, 40 P.3d 632, 635 (Utah 2002).

[28] *Pigs Gun Club, Inc. v. Sanpete Cty.*, 42 P.3d 379, 382–83 (Utah 2002).

Here, Defendants' actions fall under the blanket immunity granted under the Immunity Act.[29] Because Defendant's activity is immunized, the next step is to see whether blanket immunity has been waived in another section of the Act. Under Utah Code Ann. § 63G-7-301(1)(b) immunity is waived for "[a]ctions arising out of contractual rights or obligations." The Court must therefore consider whether Plaintiff's proposed state-law claims arise out of contractual rights or obligations.

As stated, Plaintiff seeks to assert claims for breach of fiduciary duty/implied warranty of good faith, quasi contract/promissory estoppel, and common law right to publicity. In *Sadwick v. University of Utah*,[30] this Court, per the Honorable Tena Campbell, found that a breach of fiduciary duty is typically considered a form of tort.[31] Only if Plaintiff can point to facts that would suggest that her "fiduciary duty claim is the extraordinary type sounding in contract and not in tort,"[32] can her claim survive dismissal. Here, Plaintiff has pointed to no such facts. Therefore, her breach of fiduciary duty claim does not arise out of contractual rights or obligations and is barred by the Immunity Act.

As part of her breach of implied warranty of good faith claim, Plaintiff claims that "the University of Utah entered into a contract with plaintiff to provide her educational services towards a doctoral degree."[33] Plaintiff claims that the University of Utah breached this implied warranty. However, Plaintiff's state-law claims against the University of Utah are barred by the

---

[29] *See* UTAH CODE ANN. § 63G-7-201 (West 2016).

[30] No. 2:00-CV-412 TC, 2001 WL 741285 (D. Utah Apr. 15, 2001).

[31] *Id.* at *12 (D. Utah Apr. 15, 2001).

[32] *Id.*

[33] Docket No. 37 Ex. 1 ¶ 71.

Eleventh Amendment. Therefore, amendment to allow this claim would be futile. Plaintiff also asserts that Dr. Strassberg acted in bad faith and treated her unfairly. However, there are not sufficient allegations that Plaintiff had a contractual relationship with Dr. Strassberg or that her claims arise out of that relationship.

Plaintiff seeks to bring claims for quasi-contract and promissory estoppel based on an email and letters exchanged between Plaintiff and Defendant. These items do not create any sort of contractual relationship, but rather document the parties' discussion as to whether Defendants utilized Plaintiff's methods or materials. Because these claims do not arise out of contractual rights or obligations, these claims fail.[34]

Finally, Plaintiff's claimed right to publicity sounds in tort, not contract. Therefore, immunity for these claims have not been waived.

2.  *Notice Under the Governmental Immunity Act of Utah*

Defendants also argue that Plaintiff has failed to comply with the notice requirements of the Immunity Act. The Act provides:

> Any person having a claim against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.[35]

The notice of a claim shall set forth: (i) a brief statement of the facts; (ii) the nature of the claim asserted; (iii) the damages incurred by the claimant so far as they are known; and (iv) if the claim is being pursued against a governmental employee individually as provided in Subsection

---

[34] *See Mecham v. Utah State Dep't of Corrections,* No. 2:09-CV-149 CW, 2011 WL 839862, at *2 (D. Utah, Mar. 9, 2011).

[35] UTAH CODE ANN. § 63G-7-401(2).

63G-7-202(3)(c), the name of the employee.[36]  The notice of claim must provide "enough specificity in the notice to inform as to the nature of the claim so that the Defendant can appraise its potential liability."[37]

In *Yearsley v. Jensen*, the plaintiff's notice of claim alleged trespass and assault.[38]  The plaintiff then moved for leave to file an amended complaint, adding on "malicious" assault and battery, and "malicious" arrest and prosecution.[39]  The court in *Yearsley* did not allow the plaintiffs to amend their complaint, and stated that "[n]o mention is made in [the notice of claim] of any unlawful arrest or malicious prosecution . . . . [b]y no stretch of the facts can a claim for the physical beating be construed to include a claim for malicious prosecution."[40]

Plaintiff's Notice of Claim was her draft of her first Complaint for Copyright Infringement and Unfair Competition. Within the Notice, there is no mention of any of the state-law claims Plaintiff seeks to add.  Further, there was nothing to put Defendants on notice that Plaintiff might be asserting such claims.   Because the Notice of Claim did not support or indicate any of Plaintiff's new claims, Plaintiff did not comply with the Immunity Act with her Notice of Claim.  Compliance is jurisdictional.  Therefore, this Court lacks jurisdiction over Plaintiff's state-law claims and leave to amend will not be permitted.

---

[36] *Id.* § 63G-7-401(3)(a).

[37] *Yearsley v. Jensen*, 798 P.2d 1127, 1129 (Utah 1990).

[38] *Id.* at 1128.

[39] *Id.*

[40] *Id.* at 1129.

11

### 3. *Timeliness*

Finally, Defendant argues that the relevant statute of limitations in the Immunity Act bars Plaintiff's state-law claims. Section 63G-7-402 of the Utah Code states:

> A claim against a governmental entity, or against an employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the person and according to the requirements of Section 63G-7-401 within *one year after the claim arises* regardless of whether or not the function giving rise to the claim is characterized as governmental.[41]

The statute of limitations does not begin until the claimant knows, or through the exercise of reasonable diligence, should have known of alleged claims.[42]

Plaintiff knew or should have known of many of the alleged state-law claims as early as 2007. For example, Plaintiff alleges that Strassberg breached his fiduciary duty when he locked Plaintiff out of his laboratory in 2007.[43] Plaintiff also should have known of the other alleged claims sometime between 2009 and 2011, which is around the time she alleges that Defendants published the allegedly infringing papers. Plaintiff's counsel wrote a cease-and-desist letter on April 1, 2011, noting Plaintiff's awareness of the "unauthorized uses of her copyrighted masters thesis work."[44] Therefore, Plaintiff should have submitted a notice of claim well before October 2015. In sum, Plaintiff's state-law claims must fail because the Immunity Act grants immunity, because Plaintiff failed to include the new claims in her Notice, and because amendment would be untimely.

---

[41] UTAH CODE ANN. § 63G-7-402 (emphasis added).

[42] *Id.* § 63G-7-401.

[43] Docket No. 1 ¶ 17; Docket No. 37 Ex. 1 ¶ 69.

[44] Docket No. 43 Ex. 16.

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Leave to Amend (Docket No. 37) is DENIED.

DATED this 18th day of April, 2017.

        BY THE COURT:

        _____
        Ted Stewart
        United States District Judge