IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| ESTHER ISRAEL, | |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DONALD STEVEN STRASSBERG, JORDAN ELIZABETH RULLO, JULIA MACKARONIS, KELLY KINNISH, MICHAEL MINER, | Case No. 2:15-CV-741 TS |
| | District Judge Ted Stewart |
| Defendants. | |

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Court will grant the Motion.

I. BACKGROUND

Pro se Plaintiff Esther Israel ("Plaintiff") was admitted to the Ph.D. Psychology program at the University of Utah in 2002. Defendant Donald Strassberg was Israel's assigned research advisor. The University dictated that, prior to pursuing a doctoral degree, Plaintiff needed to meet the University's requirements for a master's degree in clinical psychology. Accordingly, Plaintiff was required to complete a master's thesis.

During her studies, Plaintiff researched the concept of relying on viewing time to measure a subject's sexual interest. This research became the subject of her master's thesis. In developing a study that would form the basis of her thesis, Plaintiff selected and arranged a set of images, wrote instructions and survey questions, and created the syntax necessary for the study

1

to be administered by a computer program called DirectRT. The images, text, and syntax ultimately used in her study are the subject of this copyright infringement suit.[1]

Israel's master's thesis, entitled "Viewing Time as an Objective Measure of Sexual Interest," was approved for publication in June 2006. Strassberg felt the work was important to the field of study and, in 2007, Strassberg submitted Plaintiff's master's thesis for publication in an academic journal with his name included as second author. At some point during the time Plaintiff and Strassberg worked together, their relationship became strained.

In 2005, Defendant Jordan Rullo joined the graduate program and began working with Strassberg, who was assigned to be her graduate advisor. Plaintiff alleges that Strassberg began sharing Plaintiff's original materials with Rullo around this time, and that the two Defendants used Plaintiff's thesis materials without her knowledge or consent. Defendants assert that Plaintiff willingly gave them permission to use the materials, and also assisted Rullo in the development of Rullo's thesis.

Rullo published her master's thesis in 2008. Rullo's thesis utilized Plaintiff's study materials and methods and built upon Plaintiff's viewing time study by examining the relevant data as to gay and lesbian populations.[2] Strassberg felt Rullo's thesis was also important to the field of study and submitted it for publication. Rullo's thesis was published in March 2009 and included Strassberg as second author and Plaintiff as third author. Plaintiff alleges she did not

---

[1] In May 2008, Plaintiff applied for and obtained a Certificate of Registration for these elements of her study.

[2] Plaintiff's thesis focused exclusively on heterosexuals.

agree to being listed as third author, though Defendants maintain she specifically requested attribution and agreed to be third author, given her significant contributions to the work.

In 2009, Plaintiff left the University on contentious terms without completing her Ph.D. program. However, a number of graduate students working under the advisement of Strassberg continued to build on Plaintiff's original research after Plaintiff left the University.

Israel filed this suit in October 2015, naming the University of Utah, Strassberg, Rullo, and several other graduate students that worked under the advisement of Strassberg as Defendants. Plaintiff alleges Defendants Strassberg, Rullo, and the other named individuals produced peer-reviewed publications, academic papers, or presentations that infringed on her copyright without her consent, and further misappropriated the use of her name. Plaintiff also alleged that Defendant University of Utah repeatedly failed to address her reports of copyright infringement.

The University of Utah filed a Motion to Dismiss Plaintiff's claims based on Eleventh Amendment sovereign immunity. Plaintiff's Motion was granted on April 18, 2017, and Defendant University of Utah was dismissed from the case.

The remaining Defendants filed a Motion for Summary Judgment on April 10, 2018, seeking dismissal of each of Plaintiff's claims as a matter of law. Plaintiff opposes the Motion, arguing that a number of disputed facts prevent the Court from granting summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] The materiality requirement dictates that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."[4]

"At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true."[5] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[6] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[7]

## III. DISCUSSION

Plaintiff alleges that Defendants (1) infringed on her copyright in violation of 17 U.S.C. § 501; (2) violated the Federal Lanham Act, 15 U.S.C. § 1225, by misattributing or failing to attribute Plaintiff's name in the authorship of various publications; and (3) violated Utah's false endorsement law codified in Utah Code Ann. § 13-11a-3.

---

[3] Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted).

[6] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[7] *Matsushita Elec. Indus.*, 475 U.S. at 587 (internal quotation marks and citation omitted).

A. COPYRIGHT INFRINGEMENT

Claims one and five in Plaintiff's Complaint allege copyright infringement. "In order to prevail on a claim of copyright infringement, the plaintiff must show: (1) ownership of a valid copyright, and (2) copying by the defendant of protected components of the copyrighted material."[8]

1. *Valid copyright*

"A Certificate of Registration, if timely obtained, constitutes prima facie evidence of the validity of the copyright. Once the presumption . . . is established, the defendant has the burden of overcoming it."[9] "Defendant may rebut the presumption by presenting evidence casting doubt on the validity of the copyright. If defendant makes a sufficient showing, then the presumption dissolves and the burden shifts back to plaintiff."[10]

It is undisputed that Plaintiff obtained a Certificate of Registration for the following components of her master's thesis: (1) the arrangement and compilation of the images used in the viewing time study; (2) the written instructions and surveys included in the viewing time study; and (3) the DirectRT syntax, which allowed Plaintiff to administer the study via computer. Defendants argue none of these components are eligible for copyright protection. For purposes of this Motion, the Court can assume that these components are protectable.

Plaintiff did not, however, obtain a Certificate of Registration for the authored work of her master's thesis or the published article by Plaintiff and Strassberg. It is not clear whether

---

[8] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir. 1993).
[9] *Id.* at 831–32.
[10] *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 746 (E.D. Mich. 1998).

Plaintiff's infringement claims are based, at least in part, on infringement of her master's thesis and article.

"Copyright registration is not a prerequisite for copyright protection."[11] However, registration is necessary as a prerequisite for an infringement suit,[12] excepting three circumstances not present in this case.[13] Because she did not obtain a copyright registration for her master's thesis, Plaintiff cannot rely on her thesis or published articles as a basis for copyright infringement.[14]

2. *Actual copying*

Having deemed certain parts of Plaintiff's thesis materials copyrightable, for purposes of this Motion, the Court must now determine if the Defendants actually copied protectable elements of the copyrighted work. This requires the Court to determine: "(1) whether the defendant, as a factual matter, copied portions of the plaintiff's [material]; and (2) whether, as a

---

[11] *Enter. Mgmt. Ltd., Inc. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) (citing 17 U.S.C. §§ 102, 408(a)).

[12] *Id.*; 17 U.S.C. § 411(a).

[13] *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010) ("[Section] 411(a) expressly *allows* courts to adjudicate infringement claims involving unregistered works in three circumstances: where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused.").

[14] Though not clear, Plaintiff seems to argue that her master's thesis does not need to be registered because it is a derivative work of her registered copyright, This argument does not find support in the law. *See Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 630 (6th Cir. 2001), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). However, the Court need not reach a determination on this issue because, as will be discussed, Plaintiff is not able to show Defendants unlawfully copied her thesis.

6

mixed issue of fact and law, those elements of the [material] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable."[15]

The Court will first discuss which elements of Plaintiff's work are protectable. Once the protectable elements have been determined, the Court will assess the evidence showing actual copying of the protectable elements for each of the alleged offending materials.[16]

a. Protectable elements

"The mere fact that a work is copyrighted does not mean that every element of the work may be protected."[17] "Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself."[18] "The writings which are to be protected are *the fruits of intellectual labor,* embodied in the form of books, prints, engravings, and the like."[19] "No matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking. The very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas."[20] "Thus, courts comparing works must first distill the protectable elements of the copyrighted work—i.e., determine what

---

[15] *Gates Rubber Co.,* 9 F.3d at 832.

[16] *See id.* at 833 ("Although we suggest that it will often be helpful to make an initial determination of whether the defendant copied portions of the plaintiff's program before determining whether the copying involved protectable elements under the copyright law, there may be cases where the issue of protectability can more efficiently be addressed first.").

[17] *Feist Publ'ns, Inc. v Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 348 (1991).

[18] *Mazer v. Stein,* 347 U.S. 201, 217 (1954).

[19] *Feist Publ'ns, Inc.*, 499 U.S. at 346 (quotation marks and citation omitted) (emphasis in original).

[20] *Id.* at 349 (quotation marks and citation omitted).

aspects constitute protectable expression."[21] This distinction is commonly referred to as the "idea/expression dichotomy."[22]

"The idea/expression dichotomy traces back to the Supreme Court's decision in *Baker v. Selden*."[23] In *Baker*, Selden obtained copyrights on a series of books setting out a new system of bookkeeping. The books included an explanation of the system and blank forms with ruled lines and headings designed for use with that system. Selden sued Baker for copyright infringement after Baker published account books making use of a system with similar forms.

The Supreme Court framed the issue as "whether the exclusive property in a system of book-keeping can be claimed, under the law of copyright, by means of a book in which that system is explained?"[24] In concluding that Baker had not infringed Selden's copyright, the Court explained the following:

> The copyright of a book on perspective, no matter how many drawings and illustrations it may contain, gives no exclusive right to the modes of drawing described, though they may never have been known or used before. . . . [Similarly,] [t]he copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer from using them whenever occasion requires. . . .
>
> [W]hilst no one has a right to print or publish his book, or any material part thereof, as a book intended to convey instruction in the art, any person may practice and use the art itself which he has described and illustrated therein. The use of the art is a totally different thing from a publication of the book explaining it.[25]

---

[21] *Blehm v. Jacobs*, 702 F.3d 1193, 1200 (10th Cir. 2012).

[22] *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014).

[23] *Id.* at 1355.

[24] *Baker*, 101 U.S. at 101.

[25] *Id.* at 103–04.

The case at hand is factually similar to *Baker*. Plaintiff seeks to protect the study she wrote, arranged, and implemented. While Plaintiff is entitled to protection from copyright infringement of her thesis materials, she is only entitled to protection of the work as it is expressed. The ideas underlying the written expression—the use of images of attractive individuals and scenery, tracking viewing time as a measure of sexual interest, asking participants to rate images on a scale, inquiring as to participants' sexual orientation and/or sexual interests and comfort levels, and other elements related to the process and method of Plaintiff's study—are not protectable elements of the copyright. As stated in *Feist*,

> It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation . . . , however, . . . [t]he primary objective of copyright is not to reward the labor of authors, but to promote the Progress of Science and useful Arts. To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.[26]

b.  Evidence of copying

The Court must now determine if any of the accused works infringe on the protectable elements of Plaintiff's thesis materials, namely the images, text, and syntax as expressed by Plaintiff. Finding direct proof of copying is rarely feasible.[27] "Therefore, a plaintiff can indirectly prove copying (in a factual sense) 'by establishing that Defendants had access to the copyrighted work *and* that there are probative similarities between the copyrighted material and the allegedly copied material.'"[28] Absent a showing of both elements, the Court must deny the claim.

---

[26] *Feist Publ'ns Inc.*, 499 U.S. at 349–50 (internal quotation marks and citations omitted).

[27] *See La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009); *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir. 1996).

[28] *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284) (emphasis added).

Proving a probative or substantial similarity "is primarily a qualitative rather than a purely quantitative analysis and must be performed on a case-by-case basis."[29] "The proper focus is on the similarities between the works, not their minute differences."[30] "[A] court may grant summary judgment for the defendant if the protectable expression in the copyrighted work and the allegedly infringing work is 'so dissimilar that no reasonable jury could find for the plaintiff on the question of substantial similarity.'"[31]

Plaintiff's first cause of action specifically lists four alleged infringing works and then references an attached list that includes all of the alleged infringing works. Plaintiff's fifth cause of action alleges that there are a number of additional unnamed documents that relied on her thesis materials and thus infringed on her copyright. The Court will assess the validity of the claims against each of the offending works.

    i.       Jordan Rullo's master's thesis entitled "Category Specificity in Sexual Arousal/Interest as a Complex Function of Sex and Sexual Orientation"

In Plaintiff's deposition, Plaintiff makes a number of allegations of infringement regarding Rullo's thesis. These allegations include that Rullo's thesis copied the substance of portions of Plaintiff's literature review,[32] that Rullo's thesis explains the same stimulus and procedure as that used by Plaintiff in her study, including references to the DirectRT program,[33]

---

[29] *Blehm*, 702 F.3d at 1202 (quoting *Gates Rubber Co.*, 9 F.3d at 839).

[30] *Id.*

[31] *Id.* at 1202–03 (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1297 (D.C. Cir. 2002)).

[32] Docket No. 70-19, at 166:22-168:25.

[33] *Id.* at 166:7-18.

that Rullo's thesis made use of her data, copied her methods, and recited many of her original ideas,[34] and that Rullo explains an identical procedure for conducting her study.[35]

Unquestionably, Rullo's thesis makes significant use of Plaintiff's original materials. Notably, Plaintiff is cited numerous times in Rullo's thesis. In spite of this, Rullo has not infringed on any of the protectable elements of Plaintiff's copyright.

As explained above, the methods, ideas, processes, findings, etc. of Plaintiff's materials and study are not protected elements of Plaintiff's copyright. The protectable elements include only the expression of Plaintiff's work.

Plaintiff's Surreply does identify three sentences originated in her protected materials that also appear, either in whole or in part, in several of the alleged infringing works, including Rullo's master's thesis.[36] The copied portion as written in Plaintiff's protected materials reads,

> We would like you to rate each of the following pictures in terms of how sexually appealing you find the picture to be. Please make your ratings on a scale of 1-7 where 1 is "not at all sexually appealing" and 7 is "extremely sexually appealing." We are interested in your rating of each picture, not how you believe others might rate the picture.[37]

---

[34] *Id.* at 169:5-20.

[35] *Id.* at 178:6-179:20.

[36] The relevant portion of Rullo's master's thesis reads, "Their task was to rate how 'sexually appealing' they found each picture to be on a scale of 1-7, where 1 was 'not at all sexually appealing' and 7 was 'extremely sexually appealing.'" Docket No. 70-11, at 26. The full sentences as quoted in Plaintiff's protected materials appear in both of Rullo and Strassburg's published articles. *See* Docket No. 70-12, at 4 and Docket No. 70-14, at 5.

[37] Docket No. 70-1, at 10.

Copying must be significant to amount to infringement.[38] Here, where Rullo and Strassberg copied only three sentences of the entire work, which simply quote the instructions given to the participants of the study, the copying is not sufficiently significant to amount to infringement. Even if the copying was significant enough to amount to infringement, the infringement would be excused by the doctrine of fair use.

The fair use doctrine "permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."[39] 17 U.S.C. § 107 codifies the following elements to determine whether an otherwise infringing material is protected by the fair use doctrine:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Each of the above stated factors weigh in favor of finding that Rullo's copying of Plaintiff's thesis is entitled to protection under the fair use doctrine.

---

[38] *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1287 ("After filtering out the unprotectable elements of a work, a court must determine whether those protectable portions of the original work that have been copied constitute a substantial part of the original work—i.e. a matter that is significant in the plaintiff's product.") (internal quotation marks and citation omitted); *Feder v. Videotrip Corp.*, 697 F. Supp. 1165, 1176 (D. Colo. 1988) ("[I]n determining infringement, if the points of dissimilarity not only exceed the remaining examples of similarity, but indicate that these slight similarities are of minimal importance either quantitatively or qualitatively, then there is no infringement.").

[39] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (internal quotation marks and citation omitted).

First, the purpose of the use is for nonprofit educational purposes, not commercial purposes, and therefore weighs in favor of finding fair use. Second, the nature of the use factor requires consideration of whether the work is that which copyright protections were intended to extend.[40] Works that are more creative and less factual qualify for more protections.[41] Here, Plaintiff's work is based on scientific findings and facts, not fictional, creative works.[42] Therefore, the second factor also weighs in favor of finding fair use.

The third factor, requiring consideration of the portion of the work that is copied, also weighs in favor of fair use here because the amount of text copied word-for-word from Plaintiff's thesis is relatively minimal. Additionally, the copied expression merely explains a process used in conducting the study and is, therefore, less significant substantively.

Finally, the last factor, "the effect of the use upon the potential market for or value of the copyrighted work," "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by defendant would result in a substantially adverse impact on the potential market for the original."[43] This factor also weighs in favor of finding fair use. Academic studies and publications often flow from previous studies and publications. Overlap and building upon research materials is critical to the advancement of science.

---

[40] *Id.* at 586.

[41] *See id.*

[42] *See Stewart v. Abend*, 495 U.S. 207, 237–38 (1990) ("In general, fair use is more likely to be found in factual works than in fictional works.").

[43] *Campbell*, 510 U.S. at 590 (internal quotation marks and citation omitted).

Based on this analysis, the text of Rullo's thesis that is substantially similar to the text of Plaintiff's protected materials falls comfortably under the protections of the fair use doctrine.

Plaintiff's deposition also provides an example of a part of Rullo's thesis that contains language substantially similar to that included in Plaintiff's master's thesis.[44] As previously discussed, Plaintiff's master's thesis has not been registered and is, therefore, not eligible to be the subject of an infringement suit. However, even if the thesis is eligible, an infringement suit would fail under the doctrine of fair use and for lack of significant copying for substantially the same reasons as those discussed above.

The Court, therefore, finds that Plaintiff has failed to create an issue of fact regarding her claim that Rullo's thesis infringes on her copyright.[45]

  ii. Rullo and Strassberg's article entitled "Category-Specificity in Sexual Interest in Gay Men and Lesbians"

This article is the version of Rullo's thesis that was published in an academic journal. Plaintiff has not alleged any facts related to infringement that are different than those alleged against Rullo's thesis. Therefore, for the same reasons Plaintiff failed to create an issue of fact regarding the infringement of Rullo's thesis, Plaintiff has also failed to create an issue of fact regarding the above-titled article's infringement on her copyright.

---

[44] Docket No. 70-19, at 172:20-174:18.

[45] Plaintiff is listed as third author on this article. Plaintiff and Defendants dispute whether Plaintiff agreed to be listed as third author and the effect the attribution has on Plaintiff's infringement claims. Even accepting Plaintiff's asserted facts and legal interpretation, Plaintiff cannot succeed on this claim.

      iii.      Jordan Rullo's dissertation entitled "Bisexuality: Beyond the Prevailing Assumptions About Male and Female Sexual Orientation"

Plaintiff testified at her deposition that she believes significant portions of certain sections of Rullo's dissertation infringes her copyright. Plaintiff explains that Rullo describes the "exact same study."[46] Plaintiff cites to page 142 of the dissertation, which states "the stimuli and procedures in the present study were identical to those used with the heterosexual."[47] The article then cites to Plaintiff's thesis and article.

It is undisputed that Rullo relied on the Plaintiff's copyrighted material to conduct the study that is the subject of Rullo's dissertation. However, Rullo's dissertation merely explains that her study was identical to Plaintiff's study, and, accordingly, attributes Plaintiff as the originator. A description of the copyrighted materials is insufficient to create an issue of fact as to whether the two works are substantially similar. Absent any evidence of substantial copying of Plaintiff's protectable materials, as expressed, the Court finds that Rullo's dissertation is "so dissimilar" from the protected elements of Plaintiff's copyrighted work that no reasonable jury could find infringement.

      iv.      Rullo, Strassberg, and Miner "Gender-Specificity in Sexual Interest in Bisexual Men and Women"

Plaintiff alleges the use of her syntax, text, and stimuli are infringed upon in the above-titled article.[48] Again, Plaintiff fails to identify any express copying of her protectable materials.

---

[46] Docket No. 70-19, at 198:10-17.

[47] *Id.* at 199:14-17.

[48] *Id.* at 200:15-201:1.

Therefore, as with the articles discussed above, the Court finds that Plaintiff has failed to create an issue of fact regarding the alleged infringement.

     v.     Additional copyright infringements

Plaintiff further provided a list of additional documents and publications that allegedly infringe on her work. The allegations of copyright violation of these materials suffer from the same deficiencies as those previously discussed. Plaintiff only suspects that Defendants used her materials in conducting the studies underlying the findings contained in these works. Such is not infringement on the protectable elements of Plaintiff's copyright.

The unnamed documents discussed in Plaintiff's fifth cause of action, even if identified for the Court, likely do not infringe on the Plaintiff's copyright for the same reasons.

Because Plaintiff has failed to identify any legally significant copying of the protectable elements of her thesis materials by any of the Defendants, the Court finds that the allegedly offending martials are "so dissimilar" to Plaintiff's thesis materials, "that no reasonable jury could find for the plaintiff on the question of substantial similarity."[49] The Court will accordingly dismiss Plaintiff's first and fifth claims for copyright infringement.

B. LANHAM ACT CAUSES OF ACTION

Plaintiff's second and fourth causes of action arise under the Federal Lanham Act, which provides in relevant part,

---

[49] *Blehm*, 702 F.3d at 1203. Both parties discuss whether the Defendants had access to the protected materials. There are obvious disputes of fact regarding this issue. However, because Plaintiff has failed to demonstrate substantial similarity as to any of the alleged infringing works, these disputes are not material. As stated, indirect evidence of actual copying must include evidence of both access and substantial similarity.

16

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, . . . or any combination thereof, or any false designation of origin, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[50]

Plaintiff alleges that Defendants violated her rights under the Lanham Act by (1) falsely attributing authorship to Plaintiff in various presentations and papers and (2) failing to appropriately attribute Plaintiff's authorship in various presentations and publications. Plaintiff's Complaint alleges that she was harmed professionally by these violations.

As argued by Defendant, Plaintiff cannot succeed on her Lanham Act claims because Plaintiff's name was not used "in commerce." Congress made clear that its purpose in enacting the Lanham Act is wholly related to the commercial use of marks in stating, "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce . . . ."[51]

Plaintiff has not provided the Court with any evidence suggesting that the use of her name listed, or not listed, on the articles and presentations at issue are commercial in nature. The articles at issue, and the publications in which they were featured, are scientific and educational in nature. Academic publications fall outside of the purview of congressional reach under the commerce clause because they include non-commercial speech, which is entitled to the highest levels of protection by the First Amendment of the Constitution.[52]

---

[50] 15 U.S.C. § 1125(a).

[51] *Id.* § 1127.

[52] *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 952 (11th Cir. 2017), *cert. denied sub nom. Tobinick v. Novella*, 138 S. Ct. 449 (2017).

Plaintiff alleges the articles at issue are in commerce because the publications of the articles benefit from paying readers and subscribers. This argument has been rejected by circuit courts of the United States, finding that "magazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech subject to Lanham Act liability."[53]

Additionally, Plaintiff has not alleged that her name was not used and/or misused "in commerce." No commercial benefit was added or taken away from the articles' inclusion and/or exclusion of Plaintiff's name and nothing suggests that the publications suffered any form of economic loss from the use or non-use of Plaintiff's name. Further, though Plaintiff alleged she has suffered professional harm from the misuse of her name, she failed to allege any specific economic harm that has resulted directly from the alleged misuse of her name.

In light of the above, the Court finds Plaintiff failed to present any material issues of fact regarding Plaintiff's second and fourth causes of action. Plaintiff argues that summary judgment on this issue is not appropriate because "whether or not scientific research is commercial use is a question of fact that cannot be presumed."[54] Plaintiff is incorrect. Whether the use of a mark is used in commerce is an issue of law to be determined by the Court. The Court will, therefore, dismiss Plaintiff's second and fourth claims as a matter of law.

## C. STATE LAW FALSE ADVERTISING CLAIM

Plaintiff brought suit before this Court asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331. Because the Court has original jurisdiction over the Plaintiff's copyright and

---

[53] *Id.* (citing *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013)).

[54] Docket No. 73, at 15.

Lanham Act causes of action, the Court may exercise supplemental jurisdiction over the remaining state claim.

When federal claims are dismissed, the Court retains subject matter jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) and (c).[55] It is, therefore, up to the Court's discretion whether to exercise this supplemental jurisdiction over the state law claims or remand.[56] However, the Tenth Circuit has suggested, "[w]hen all federal claims have been dismissed, the court . . . usually should[] decline to exercise jurisdiction over any remaining state claims."[57] Having resolved all of the federal claims and having considered the relevant factors,[58] the Court declines to exercise its discretion over Plaintiff's remaining state-law claim.

III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 69) is GRANTED. Plaintiff's first, second, fourth, and fifth causes of action are dismissed with prejudice. Plaintiff's third cause of action is dismissed without prejudice.

---

[55] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

[56] *Id.* at 640.

[57] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)).

[58] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.").

DATED this 7th day of September, 2018.

BY THE COURT:

_____
Ted Stewart
United States District Judge